**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **GREG KERSTEN, an individual; et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**EQUINE ASSISTED GROWTH AND LEARNING ASSOCIATION, INC., a Utah nonprofit corporation; et al.,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 2:10-cv-580-PMW**<br><br><br>**Magistrate Judge Paul M. Warner** |

Pursuant to pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure, all parties to this case have consented to having Magistrate Judge Paul M. Warner conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] Before the court is Greg Kersten ("Kersten"), et al.'s (collectively, "Plaintiffs") motion to remand this case to state court.[2] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

---

[1] *See* docket no. 9.

[2] *See* docket no. 3.

**RELEVANT BACKGROUND**

Plaintiffs filed their complaint in this case in state court on June 25, 2007.[3]  According to

the complaint, Kersten was a principal officer of and was employed by Equine Assisted Growth

and Learning Association, Inc. ("EAGALA").  Plaintiffs allege that Kersten's status as a

principal officer and employment were eventually terminated by EAGALA.  Plaintiffs'

allegations about the events related to and following Kersten's termination form the basis for

Plaintiffs' claims in this case.

In the portions of the complaint relevant to the motion before the court, Plaintiffs allege

that "Kersten developed and created a therapeutic modality and system known as 'Equine

Assisted Psychotherapy' ('EAP'), which incorporates specialized techniques and approaches

using horses as a tool for emotional growth and learning."[4]  The complaint also alleges that

Kersten had "developed a substantial body of unique and proprietary training materials and

systems for EAP, which include and constitute his protected intellectual property ('Intellectual

Property')" and that "[t]he Intellectual Property was developed by Kersten over years of study,

experience[,] and training at a great cost, including thousands of hours of effort to conceive,

organize, test, refine, and write the materials included in the Intellectual Property."[5]

---

[3] *See* docket no. 1, Exhibit A.

[4] *Id*. at 5-6.

[5] *Id*. at 6-7.

On July 17, 2009, Plaintiffs responded to Defendants' first set of discovery requests ("Discovery Requests").[6]  The Discovery Requests, as well as Plaintiffs' responses, make multiple references to intellectual property owned by Kersten.[7]  For example, Interrogatory No. 3 asked for details about intellectual property owned by Kersten that was used by EAGALA under a license.[8]  In response, Plaintiffs indicated that

> Kersten was the original trainer for EAGALA.  He was the author of all materials used in the training seminars.  Kersten remained in control of the material and its dissemination.  Kersten and EAGALA agreed that EAGALA could license and use Kersten's training materials, subject at any time to Kersten's right to terminate the license.  However, as EAGALA grew, more trainers were hired to teach Kersten's methods, and recognition by EAGALA and all those using Kersten's training techniques and programs was always made to the source of the philosophy and activities and Kersten remained in control of how they were taught and who taught and utilized Kersten's intellectual property.  EAGALA specifically recognized Kersten's creation and ownership of his intellectual property, and his right to control the same.[9]

Interrogatory No. 4 asked Plaintiffs to identify the intellectual property owned by Kersten that was referenced in the complaint.[10]  Plaintiffs responded by stating:

> The following constitutes specific intellectual property used by EAGALA which is owned by Kersten:

---

[6]  *See* docket no. 1, Exhibit C.

[7]  *See id*.

[8]  *See id*. at 4.

[9]  *Id*. at 4-5.

[10]  *See id*. at 6.

3

1) Kersten's Equine Services Manual 2nd Edition 1998;
2) EAGALA Manual 2nd Edition 2000;
3) EAGALA Manual 3rd Edition 2004;
4) EAGALA Manual 4th Edition 2005;
5) Current EAGALA Training Schedule 2008;
6) The Equine Assisted Psychotherapy model and associated training techniques.[11]

On June 21, 2010, Kersten's deposition was taken.[12]  In relevant part, the transcript of Kersten's deposition provides:

Q. We were talking a little before we broke for lunch about EAP, the concept, the whatever you want to call it, right?
A. Correct.
Q. So is it your conception that you own the concept of EAP?
A. Yes.
Q. And Equine Assisted Psychotherapy, correct?
A. Correct.
Q. So we know what the term is.
A. Yes.
Q. And to the extent that the manuals of [EAGALA]?
A. (Witness nods head up and down.)
Q. To the extent that the ideas of EAP are in those manuals, you own the manuals or the concept?
A. You pose a good question here that is helping me separate maybe a little bit of what we were talking about before, is that the – I own the concept, and I own the manuals, in part, because they were the training – the catalyst or the emphasis, the training program, so to speak, of EAP.  That is the source through the training program, is how other people became certified in EAP.  Does that make better sense?  That kind of goes back to what we were talking about before in a way.
Q. It doesn't yet, but it might.
A. I'm sorry.

---

[11]  *Id*.

[12]  *See* docket no. 10, Exhibit C.

4

Q.    No, no, you are fine.  I appreciate that explanation.  Okay.  So between 1999 and 2005, okay, [EAGALA] had manuals, correct?

A.    Correct.

Q.    What types of manuals?

A.    They were training manuals.  We had a Level 1 training manual.  I don't know if the first manual for [EAGALA] was actually titled Level 1 or not, but it eventually became Level 1.  And then we had a Level 2, kind of a binder, and it, too, was considered kind of a manual or part of the training program.

Q.    Okay.  And in 2006 you were no longer there, correct?

A.    Correct.

Q.    The termination happened in 2005, I think we established.

A.    Yes.

Q.    Do you claim an ownership in that manual, the 2006 manual?

A.    One, I don't – I get stuck on that word "claim."  I disagree with the word "claim."  I do own the intellectual property right that is published in there, and it was put in there without my permission.

Q.    Okay.  So the idea or the actual manual itself, I guess, is where I'm confused.

A.    The manual – like I stated earlier, the manual might be better classified – and this is where I kind of get hung up – the manuals would be a part of the certification program, which I intend I own and have owned from the beginning of its origin.

Q.    Okay.

A.    So I own the intellectual property right, and I also own – I have possession, ownership, of the certification program.

Q.    Do you know whether the certification program is the same today as in 2005 for [EAGALA]?

A.    I believe it has changed somewhat today.

Q.    And so in the current training, what would be your intellectual property?

A.    We have – beforehand we had made a list of that.  I don't know if I could come off the top of my head.  But in general, I believe specific developed exercises that I created back with Equine Services, and some even before then, are still being utilized in there.  And terms such as "EAP" or

> "based on EAP" or "Equine Assisted Growth and
> Learning," I still lay claim to anything "Equine Assisted,"
> or I am owner of. I don't just lay claim to it; I am owner of
> it.
>
> Q.    You own anything related to "Equine Assisted"?
> A.    (Witness nods head up and down.)
> Q.    I'm not trying to make this difficult at all. I'm just trying to
>        get it down so we can move on to something else. So you
>        own the concepts of EAP?
> A.    Correct.
> Q.    The term "EAP" and the concepts related thereto?
> A.    Correct.
> Q.    And you also own the training program, correct, that
>        [EAGALA] is using?
> A.    I think it would be best if I – I like to call it the certification
>        program.
> Q.    Certification program.
> A.    Because it is not just training. We do certify.
> Q.    Absolutely. Okay. So yes?
> A.    Yes.
> Q.    And the concepts related thereto?
> A.    Yes. I own it, yes.
> Q.    Are you a psychotherapist?
> A.    No.
> Q.    And is part of the concept of EAP psychotherapy?
> A.    Yes, it's part of it.
> Q.    And so who developed the psychotherapy part of EAP?
> A.    I did.[13]

On June 25, 2010, four days after Kersten's deposition, Defendants filed the notice of

removal in this case.[14] Relying on the portion of Kersten's deposition quoted above, Defendants

assert that they learned for the first time during Kersten's deposition that Plaintiffs were claiming

infringement of intellectual property in addition to claiming conversion of tangible property.

---

[13]  *Id*. at 83:15-87:16.

[14]  *See* docket no. 1.

Based on that assertion, Defendants contend that their notice of removal was filed in a timely fashion because they discovered for the first time during Kersten's deposition that this case presented a federal question, thereby making it removable to federal court.  *See* 28 U.S.C. §§ 1441(b), 1446(b).

## ANALYSIS

In relevant part, 28 U.S.C. § 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  28 U.S.C. § 1441(b).  "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  *Id.* § 1446(b).  Alternatively,

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Id.*

The thirty-day period referenced in § 1446(b) does not begin to run until the "the defendant is able to intelligently ascertain removability."  *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998) (quotations and citation omitted).  The Tenth Circuit has indicated its disagreement with cases from other jurisdictions that "impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove *may* exist."

*Id*. In addition, the term "'ascertained' as used in section 1446(b) means a statement that should not be ambiguous or one which requires an extensive investigation to determine the truth." *Id*. at 1035 (quoting 28 U.S.C. § 1446(b)) (other quotations and citation omitted). Instead, the ability to remove a case to federal court must be based on "clear and unequivocal notice from the pleading itself, or a subsequent other paper such as an answer to interrogatory." *Id*. at 1036.

Because this case involves Defendants' reliance on Kersten's deposition testimony, the court notes that the Tenth Circuit has held that "deposition testimony, taken under state rules of procedure during the course of litigation in the state court, qualifies as an 'other paper' under § 1446(b)." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999) (quoting 28 U.S.C. § 1446(b)). When deposition testimony is relied upon as an other paper under § 1446(b), "the removal period commences with the giving of the testimony, not the receipt of the transcript." *Id*.

In their motion to remand, Plaintiffs argue that the complaint and their responses to the Discovery Requests provided Defendants with sufficient notice that Plaintiffs were claiming infringement of intellectual property, thereby providing notice that the case presented a federal question and was removable. Plaintiffs also contend that Kersten's deposition testimony did not provide any information to Defendants that was not already apparent from both the complaint and Plaintiffs' responses to the Discovery Requests. Accordingly, Plaintiffs argue that Defendants' notice of removal is untimely because Defendants were required to file it within thirty days of the date the complaint was filed (June 25, 2007) or, at the very latest, within thirty days of the date of Plaintiffs' responses to the Discovery Requests (July 17, 2009).

In response, Defendants assert that Plaintiffs referred to intellectual property only as tangible materials throughout the complaint and in their responses to the Discovery Requests. Based on that assertion, Defendants argue that neither the complaint nor Plaintiffs' responses to the Discovery Requests provided Defendants with "clear and unequivocal" notice of removability. *Akin*, 156 F.3d at 1036. Consistent with their notice of removal, Defendants argue that Kersten's deposition testimony provided them with notice for the first time that Plaintiffs were claiming infringement of intellectual property in addition to claiming conversion of tangible property. Accordingly, Defendants assert that Kersten's deposition testimony acted as the first notice of removability and that their notice of removal is timely because it was filed within thirty days of the date of Kersten's deposition.

The court agrees with Plaintiffs and has determined that Defendants' arguments lack merit. Contrary to Defendants' narrow interpretation, Plaintiffs' complaint does not reference or seek only the return of lost tangible property and damages to compensate him for that loss. For example, as noted above, the complaint alleges that Kersten "developed and created a therapeutic *modality and system* known as 'Equine Assisted Psychotherapy' ('EAP'), which incorporates specialized *techniques and approaches* using horses as a tool for emotional growth and learning."[15] Furthermore, Defendants are incorrect in asserting that the complaint does not define the intellectual property at issue and that the complaint somehow limits any such intellectual property to tangible materials. The complaint specifically states that Kersten had "developed a

---

[15] Docket no. 1, Exhibit A at 5-6 (emphasis added).

substantial body of unique and proprietary training materials *and systems* for EAP, which include and constitute his protected intellectual property ('Intellectual Property')" and that "[t]he Intellectual Property was developed by Kersten over years of study, experience[,] and training at a great cost, including thousands of hours of effort to *conceive*, organize, test, refine, and write the materials *included in* the Intellectual Property."[16]

In addition, Plaintiffs' responses to the Discovery Requests provided additional information indicating that the intellectual property at issue was not limited to tangible materials. Plaintiffs' response to Interrogatory No. 3 references tangible materials, but it also references "Kersten's methods" and "Kersten's training techniques and programs."[17] That response also indicates that Kersten was the source of the "philosophy and activities" being taught to the trainers.[18] In responding to Interrogatory No. 4, which asked Plaintiffs to identify the intellectual property at issue, Plaintiffs referenced some tangible materials but also indicated that the intellectual property included "[t]he Equine Assisted Psychotherapy model and associated training techniques."[19]

Finally, the court is not persuaded by Defendants' reliance upon Kersten's deposition testimony as the event that provided them with notice for the first time that this case was removable. The court is unable to see any information provided in the relevant portion of

---

[16] Docket no. 1, Exhibit A at 6-7 (emphasis added).

[17] *See* docket no. 1, Exhibit C at 5.

[18] *Id*. at 5.

[19] *Id*. at 6.

Kersten's deposition that was not already apparent from the complaint and Plaintiffs' responses to the Discovery Requests.

## CONCLUSION

Based on the foregoing, the court concludes that the complaint and Plaintiffs' responses to the Discovery Requests provided Defendants with sufficient notice that this case was removable. Accordingly, Defendants were required to file their notice of removal, at the very latest, within thirty days of Plaintiffs' July 2009 responses to the Discovery Requests. *See* 28 U.S.C. § 1446(b). Because Defendants' notice of removal was not filed until June 25, 2010, the court concludes that it is untimely. *See id*. Accordingly, Plaintiffs' motion to remand this case to state court[20] is **GRANTED**.

**IT IS SO ORDERED**.

DATED this 13th day of October, 2010.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[20] *See* docket no. 3.